# WETMORE *v.* KARRICK.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 144. Argued January 9, 1907.—Decided March 11, 1907.

Where an action is brought to recover upon a judgment the jurisdiction of the court rendering the judgment is open to inquiry; and the Constitutional requirement as to full faith and credit in each State to be given to the public acts, records and judicial proceedings of every other State does not require the enforcement of a judgment rendered without jurisdiction or otherwise wanting in due process of law.

A judgment rendered *in personam* against a defendant without jurisdiction of his person is not only erroneous but void, and is not required to be enforced in other States under the full faith and credit clause of the Constitution or the act of Congress passed in aid thereof, § 905, Rev. Stat.

A court which has once rendered a judgment in favor of a defendant, dismissing the cause and discharging him from further attendance, cannot, after the term or at a subsequent term, without notice to the defendant, set that judgment aside and render a new judgment against the defendant; a judgment so entered is void and not required to be enforced in

another State under the full faith and credit clause of the Constitution.

In Massachusetts the rule day when a judgment becomes final is equivalent to the end of a term, and in that State the rule is that judgment is final unless set aside within the exceptions for mistake.

Jurisdiction once lost can only be regained by some proper notice to the other party and where, as in this case, had notice been given of the motion to render a new judgment, defendant could have pleaded a discharge in bankruptcy, substantial rights are impaired, and the judgment so rendered without notice is void.

Although a mistake in regard to a judgment may be a clerical one it cannot be corrected after the term without notice, especially where the condition of the parties has changed in view of new rights acquired which render it prejudicial to enter a new judgment.

Whatever remedies may exist as to the judgment in the State where rendered, want of jurisdiction may be pleaded by the judgment debtor wherever the judgment is set up against him in another forum.

THE facts are stated in the opinion.

*Mr. William L. Ford* for plaintiff in error:

The judgment of dismissal of June 12, 1899, having been entered improvidently through a mistake or oversight as to an entry of record, the Massachusetts court did not thereby lose jurisdiction, and had the power to vacate the dismissal and restore the case to the docket after the term. *The Palmyra*, 12 Wheat. 1; *Alviso.* v. *United States*, 6 Wall. 457. *Rice* v. *Railroad Co.*, 21 How. 82, distinguished.

In almost every case in which the rule is laid down by this court that judgments cannot be vacated after the term, judgments of dismissal by mistake are excepted. See *Phillips* v. *Negley*, 117 U. S. 665, and cases therein cited.

Other United States courts recognize the exception contended for by the plaintiff in error. See city of *Manning* v. *German Ins. Co.*, 107 Fed. Rep. 52.

If the Massachusetts court did not lose jurisdiction by the dismissal by mistake and the lapse of the term, as this court has often held, then of course said court had jurisdiction, and even if under the practice of the Massachusetts courts, which does not appear, and the presumption would be against it, it was requisite to notify the defendant of the motion for

judgment on the verdict, the failure to give such notice would be a mere irregularity and not a jurisdictional defect.

The judgment of dismissal of June 12, 1899, was founded upon a mere clerical mistake of the clerk, or, at the most, upon a clerical mistake of the judge, and a judgment so entered can be vacated at any time. The power of the Massachusetts court is not limited merely to the correction of clerical errors pure and simple, but extends to the correction of judgments based thereon, even though the judgments were intended. *The Palmyra*, 12 Wheat. 1; *Alviso* v. *United States*, 6 Wall. 457; *Capen* v. *Stoughton*, 16 Gray, 364; *City of Manning* v. *German Ins. Co.*, 107 Fed. Rep. 52; *Phillips* v. *Negley*, 117 U. S. 665.

The judgment of dismissal of June 12, 1899, being irregular and entered contrary to the practice of the Massachusetts court, said court had the power to set aside said dismissal and reinstate the cause, notwithstanding the expiration of the term.

An irregular judgment is defined to be a judgment that was rendered contrary to the law or practice of the court. 1 Tidd's Pr. 512; *Dick* v. *McLaurin*, 63 N. Car. 185; see also *Union Bank of Georgetown* v. *Crittenden*, 2 Cr. C. C. R. 238; *Stacker* v. *Cooper Circuit Court*, 25 Missouri, 401; *Hunt* v. *Yeatman*, 3 Ohio, 16.

Defendant in error was not entitled to notice of the vacation of the dismissal and the reinstatement of the original suit to the docket. As the suit had been inadvertently dismissed through mistake and reinstated on the docket by said court for reasons apparent of record, no new thing was brought before the court; and even if notice was required, the absence of it affords no ground for assailing the judgment sued on herein in a collateral proceeding such as the present one. *Odell* v. *Reynolds*, 70 Fed. Rep. 656.

Notice is only necessary when the nature of the error and the appropriate amendment depend on matters not apparent on the face of the record, but shown aliunde. *Emery* v.

*Whitwell*, 6 Michigan, 474; see also *Nave* v. *Todd*, 83 Missouri, 601; *Emery* v. *Berry*, 48 N. H. 473; *Balch* v. *Shaw*, 7 Cush. 282.

No notice at all is required where the reason for the correction appears in the record.    17 Am. & Eng. Ency. of Law, 2d ed., 823.

*Mr. W. W. Millan* and *Mr. J. J. Darlington* for defendant in error:

It is not contended that the jurisdiction of the Massachusetts court was affected by the bankruptcy proceedings in Colorado or that the defendant's discharge in bankruptcy, antedating the Massachusetts judgment, is a bar to an action upon the latter. Neither of these questions is here involved.

The duty of the clerk is to make his record correctly represent the proceedings in the case, and he did not fail so to do in this case. The judgment of dismissal was duly noted and it was stricken out, not on the ground of omission of proper entries, but on the ground of "action having been taken within one year but not discovered." The action taken within one year was action *by the court itself* and duly appearing upon its own minutes.

That the judgment of dismissal entered by the Massachusetts court was a *final* judgment is settled beyond question by the highest court of that State. *Pierce* v. *Lamper*, 141 Massachusetts, 20; *Wood* v. *Payea*, 138 Massachusetts, 61.

At common law no amendment of any kind could be made after the term for any purpose. The power to amend for "misprision of clerks" was conferred by Stats. 14 Edw. III, 9 Edw. V and 8 Henry VI. *Makepeace* v. *Lukens*, 27 Indiana, 435.

A clerical error, as its designation implies, is an "error of the clerk or a subordinate officer in transcribing or entering an official proceeding." *Marsh* v. *Nichols*, 128 U. S. 605; see also *Leonis* v. *Leffingwell*, 126 California, 372, and *Villers* v. *Parry et al.*, 1 Lord Raym. 182.

No final judgment or decree can be amended at a term

subsequent to its rendition, except for mere clerical misprision or error, which means error of the clerk to make the record speak the truth, or to show what judgment the court actually rendered or intended to render. *Phillips* v. *Negley,* 117 U. S. 665; *Hume* v. *Bowie,* 148 U. S. 245; *Trust Co.* v. *Grant Locomotive Works,* 135 U. S. 224; *American Burial Co.* v. *Shaughnessy,* 59 Mississippi, 398; *James* v. *Kirby,* 85 Mo. App. 298; *Hickman* v. *Fort Scott,* 141 U. S. 418; *In re Wright,* 134 U. S. 143; *Grames* v. *Hawley,* 50 Fed. Rep. 319; *Jameson* v. *Hilton,* 85 Mo. App. 398; *Cameron* v. *McRoberts,* 3 Wheat. 591; *Gibson* v. *Wilson,* 18 Alabama, 63; *Printing Co.* v. *Green,* 52 Ohio St. 489; *Railroad Co.* v. *Holbrook,* 72 Illinois, 419; *United States* v. *Moss,* 6 How. 31; *Arrowwood* v. *Greenwood,* 5 Jones, Law, 414.

Even such errors cannot be corrected where, to do so, would be unjust either to the adverse party or to third persons, at least without notice to the parties in interest and opportunity to be heard. *Morgan* v. *Campbell,* 54 Ill. App. 242; *Swift* v. *Allen,* 55 Illinois, 303; *Bryant* v. *Vix,* 83 Illinois, 1; *Board of Commissioners* v. *Brown,* 14 Indiana, 191; *Jenkins* v. *Carroll,* 132 Indiana, 95; *Durre* v. *Brown,* 7 Indiana, 127; *Elsner* v. *Shirgley,* 80 Iowa, 30; *Montgomery* v. *Merrill,* 36 Michigan, 97; *Stringer* v. *Echols,* 46 Alabama, 61; *Harper* v. *Sugg,* 111 N. Car. 327; *Kenney* v. *Lyons,* 21 Iowa, 280; 14 Enc. Pl. & Pr. 27; *Hook* v. *Mercantile Tr. Co.,* 89 Fed. Rep. 410; *Stickney* v. *Davis,* 17 Pick. 169; *Moore* v. *Hinnant,* 90 N. Car. 163; *Coughran* v. *Gates,* 18 Illinois, 390, and *Parker* v. *Johnson,* 20 Mo. App. 516.

Under modern practice motion and notice take the place of the common law writ of error, *coram vobis. City of Manning* v. *German Ins. Co.,* 107 Fed. Rep. 52.

Any amendment of a different character, made without notice, is void, and may be attacked collaterally. *Elder* v. *Richmond Mining Co.,* 58 Fed. Rep. 536; *Blake* v. *McMurtry,* 25 Nebraska, 290; *Insurance Co.* v. *Duffy,* 67 Iowa, 175; *Warren* v. *Farquarharson,* 4 Baxt. 484.

The action of the court in the *Palmyra* case, 12 Wheat. 1, was declared in the subsequent case of *Rice* v. *Railroad Co.*, 21 How. 82, to be justified only because the *Palmyra case* was an admiralty cause, and the court refused to recognize it as an authority in a common law cause. *Alviso* v. *United States*, 6 Wall. 457, does not overrule *Rice* v. *Railroad Co.*

Mr. Justice Day delivered the opinion of the court.

This is a writ of error to the Court of Appeals of the District of Columbia to reverse a judgment of that court affirming a judgment of the Supreme Court of the District of Columbia in favor of the defendant in error, overruling a demurrer to the defendant's second plea.

The action was brought on the law side in the Supreme Court of the District of Columbia on December 1, 1903, to recover judgment against Karrick, defendant in error, upon a judgment rendered in the Superior Court for the county of Suffolk, Commonwealth of Massachusetts, on November 20, 1900. Copy of the record in the Massachusetts court is made part of the record in the Supreme Court of the District of Columbia.

This record shows that suit was brought upon certain contracts between the defendant in error and one Charles H. Wetmore, since deceased, plaintiff's intestate. The defendant was personally served with process, appeared and pleaded to the declaration. Trial was had to a jury, and resulted in a verdict against the defendant. Upon his motion the verdict was set aside. Thereupon the plaintiff filed an amendment to his declaration and another trial to a jury was had. On February 21, 1894, by another verdict, special and general, a sum of $9,169.39 was found in favor of the plaintiff. Motion for a new trial was made by the defendant and overruled March 3, 1894, and exceptions filed. On June 8, 1897, more than three years after the proceedings just recited, the action was dismissed under the general order of the court

upon the calling of the docket. Two days thereafter, June 10, 1897, the order of dismissal was stricken out and the case restored to the docket.

On June 23, 1897, attorney for the defendant entered an order withdrawing his appearance. On June 13, 1898, an attorney, whose name does not appear elsewhere in the record, withdrew his appearance. The record then shows:

"Thence the case was continued to the July sitting, 1898, when said exceptions having been presented to the court were disallowed as not conformable to the truth, the bill not properly and correctly stating the evidence so as to fairly present the questions of law raised by the defendant's exceptions."

Then follows:

"Thence the case was continued from sitting to sitting into the April sitting, 1899, when on the twelfth day of June, 1899, at a calling of the docket under the general order of court, said action was dismissed."

And then the entry:

"And now at this present October sitting, 1900, to wit, on the eighteenth day of said October, 1900, said dismissal is stricken off and the case brought forward, the same having been dismissed improvidently, action having been taken within one year, but not discovered."

On November 17, 1900, there was a motion by plaintiff for judgment on the verdict of the jury, and on November 20, 1900, judgment was entered accordingly against the defendant for the sum of $12,881.46 and costs.

Two pleas were filed to the declaration in the Supreme Court of the District of Columbia, first, the general issue *nul tiel record;* second, a special plea, wherein the defendant set out that on June 12, 1899, the cause against him in the Massachusetts court was dismissed; that under the rules of court that dismissal became final on the first Monday of July, 1899; that the cause remained so dismissed for more than five terms or sittings of the court, and until October 18, 1900; that, in

the meantime, on April 29, 1899, defendant filed his petition in bankruptcy in the District Court of the United States for the District of Colorado, enumerating in his schedule the debt due to said Wetmore, and was, by the said District Court, on June 23, 1899, discharged from all debts provable against him in bankruptcy, including the debt sued on; that subsequently to the discharge, as aforesaid, he made inquiry of the clerk of the court in Massachusetts as to the suit, and was informed that said suit was no longer pending; that relying upon this statement he took no steps to suggest in that court his discharge in bankruptcy; that the action of the court in Massachusetts, restoring the case to the docket, was without summons, citation or notice of any kind to him, or to any one for him, and without his knowledge; that the court had no jurisdiction to render the judgment sued upon.

Issue was joined upon the first plea and to the second plea a demurrer was filed, which was sustained by the Supreme Court of the District of Columbia. From the order sustaining the demurrer special appeal was taken on January 6, 1905, to the Court of Appeals for the District of Columbia, and on April 17, 1905, the judgment below was reversed and the cause remanded. 25 App. D. C. 415.

On May 16, 1905, the Supreme Court of the District of Columbia entered an order overruling plaintiff's demurrer to defendant's second plea and, the plaintiff electing to stand on his demurrer, judgment was entered for the defendant, and the plaintiff appealed to the Court of Appeals of the District of Columbia.

On October 10, 1905, the case was submitted; and, on the twelfth day of the same month, judgment below was affirmed without further opinion.

Before taking up the case in detail it must be regarded as settled by previous decisions of this court that where an action is brought to recover upon a judgment the jurisdiction of the court rendering the judgment is open to inquiry. And the constitutional requirement as to full faith and credit in

each State to the public acts, records and judicial proceedings of every other State does not require them to be enforced if they are rendered without jurisdiction, or otherwise wanting in due process of law. This principle was so lately asserted by a decision in this court as to render unnecessary more than a reference to the consideration of the subject in *Old Wayne Mutual Life Association of Indianapolis, Indiana,* v. *McDonough et al.,* decided on January 7, 1907, of the present term. 204 U. S. 8.

It is also an elementary doctrine of this court that a judgment rendered *in personam* against a defendant without jurisdiction of his person is not only erroneous but void. *Pennoyer* v. *Neff,* 95 U. S. 714. And the same case holds that such judgment is not required to be enforced in another State either by the due faith and credit clause of the Constitution or the act of Congress (Rev. Stat. § 905) passed in aid thereof.

It is apparent from the statement of facts preceding this discussion that the precise question to be determined is, whether a court which has once rendered a judgment in favor of a defendant, dismissing the cause and discharging him from further attendance, may at any time after the term, and at a subsequent term, no matter how remote from the time of rendering judgment, without motion or proceeding to vacate the judgment, and without notice, set aside the judgment so rendered and render a new judgment against the defendant for the recovery of a sum of money against him.

The general principle is that judgments cannot be disturbed after the term at which they are rendered, and can only be corrected, if at all, by writ of error or appeal, or relieved against in equity in certain cases. There are, it is true, certain exceptions to the rule within which, it is the contention of the plaintiff in error, the present action is brought.

No contention is made in the brief or oral argument of counsel for plaintiff in error that the question for decision in this case is changed or modified because of the fact that terms

of court are abolished by statute in Massachusetts. The statutes of that Commonwealth, Rev. Laws, v. 2, 1382, § 24, provide for "sittings" of the Superior Court at Boston, in the county of Suffolk, for civil business, on the first Tuesdays of January, April, July and October. The exemplified copy of the record in this case shows that the case was dismissed under the general order of the court at the April sitting, 1899, on the twelfth day of June, 1899. At the October sitting, 1900, to wit, on October 18, 1900, the dismissal was stricken off for the reason stated, and on November 12, 1900, the new judgment was rendered.

In *Dalton-Ingersoll Company* v. *Andrew J. Fiske*, 175 Massachusetts, 15, the Supreme Judicial Court recited the previous cases, holding that terms no longer exist in the Superior Court, and said (p. 22): "When we had terms the practice was to enter judgment, either on the same day in the term upon motion, or, of course, on the last day. Howe, Pract. 267. Since terms have been abolished the practice is regulated by statutes and the rules of court." In the second plea it is averred, and admitted by the demurrer, that under the rules of court the dismissal became final on the first Monday of July, 1899; that is, the first Monday of the following month.

We think this rule day equivalent to the end of a term. It is the time at which, by the rules of court adopted under statutory power, the judgment became final, unless set aside for mistake within the principles to be hereinafter discussed.

*Pierce* v. *Lamper*, 141 Massachusetts, 20, was a case where a suit had been dismissed upon the call of the docket under the same rule under which the case against Karrick, defendant in error, was dismissed for want of action within the year, which order should have been followed by an entry of judgment of dismissal, in place of which the clerk simply made a docket entry "dismissed on call." The court held, since it was the duty of the clerk to have entered the dismissal, it was to be deemed in law as actually entered and a final disposition of the case; that at a subsequent term the court had

no power to vacate it, except by writ of review filed within one year under the statute.

The doctrine that a judgment is final at the term unless set aside within the exceptions for mistake seems fully recognized by other decisions in Massachusetts. *Radclyffe* v. *Barton,* 154 Massachusetts, 157, where previous cases are cited in the opinion.

At common law a writ of error *coram vobis* brought before the court certain mistakes of fact not put in issue or passed upon, such as the death of a party, coverture, infancy, error in process or mistake of the clerk. This writ is no longer in use, but its objects are attained by motion. *Pickett* v. *Lergerwood,* 7 Pet. 142, 147.

As in the common law writ of *coram vobis,* so in the proceeding by motion, after a party has been dismissed from the action by judgment he is brought again into the court by notice of the new proceeding. *Ferris* v. *Douglass,* 20 Wend. 626.

A few of the cases from this court may be noticed which support the general proposition that, at the end of the term at which judgment was rendered, the court loses jurisdiction of the cause. The principle was briefly stated by Mr. Chief Justice Waite, speaking for the court, in *Brooks* v. *Railroad Co.,* 102 U. S. 107:

"At the end of the term the parties are discharged from further attendance on all cases decided and we have no power to bring them back. After that, we can do no more than correct any clerical errors that may be found in the record of what we have done."

The question underwent a full discussion. Mr. Justice Miller, delivering the opinion of the court in *Bronson* v. *Schulten,* 104 U. S. 410, on page 415, said:

"But it is a rule equally well established, that after the term has ended all final judgments and decrees of the court pass beyond its control, unless steps be taken during that term, by motion or otherwise, to set aside, modify, or correct

them; and if errors exist, they can only be corrected by such proceeding by a writ of error or appeal as may be allowed in a court which, by law, can review the decision. So strongly has this principle been upheld by this court, that while realizing that there is no court which can review its decisions, it has invariably refused all applications for rehearing made after the adjournment of the court for the term at which the judgment was rendered. And this is placed upon the ground that the case has passed beyond the control of the court. *Brooks* v. *Railroad Company,* 102 U. S. 107; *Public Schools* v. *Walker,* 9 Wall. 603; *Brown* v. *Aspden,* 14 How. 25; *Cameron* v. *McRoberts,* 3 Wheat. 591; *Sibbald* v. *United States,* 12 Pet. 488; *United States* v. *The Brig Glamorgan,* 2 Curt. C. C. 236; *Bradford* v. *Patterson,* 1 A. K. Marsh. (Ky.) 464; *Ballard* v. *Davis,* 3 J. J. Marsh. (Ky.) 656."

In discussing the exceptions to this rule for the correction of judgment by writ of error *coram vobis,* or motion now substituted for the old practice, the only one which has application here is error in the process through the default of the clerk.

We are unable to find in the present record any clerical mistake. The entry of action during the year upon the bill of exceptions appears to have been duly entered upon the minutes of the court; the clerk made no mistake about it. The court erroneously rendered a judgment, believing that no action had been taken, but this was not through mistake or oversight of the clerk within the meaning of the rule. The judgment intended to be entered by the court was, in fact, entered, through misapprehension it is true; but nothing was left out which the court intended to make a matter of record.

In *Hickman* v. *Fort Scott,* 141 U. S. 415–418, there was a petition to correct by new findings the special findings of fact upon which the court had rendered a judgment at a former term, which findings, it was averred, had been omitted, some unavoidably and others accidentally; but the application was overruled and error was prosecuted to this court, which,

speaking through Mr. Justice Harlan, said: "The judgment was the one the court intended to enter, and the facts found were those only which the court intended to find. There is here no clerical mistake. Nothing was omitted from the record of the original action which the court intended to make a matter of record. The case, therefore, does not come within the rule that a court, after the expiration of the term, may, by an order *nunc pro tunc,* amend the record by inserting what had been omitted by the act of the clerk or of the court. *In re Wight, Petitioner,* 134 U. S. 136, 144; *Fowler* v. *Equitable Trust Company* 141 U. S. 384; *Galloway* v. *McKeithen,* 5 Iredell (Law), 12; *Hyde* v. *Curling,* 10 Missouri, 227."

This case from 10 Missouri was quoted with approbation also in the case of *In re Wight, Petitioner,* 134 U. S. 136, 145, as follows: "A court has power to order entries of proceedings had by the court at a previous term to be made *nunc pro tunc,* but where the court has omitted to make an order which it might or ought to have made it cannot at a subsequent term be made *nunc pro tunc.*"

In the case *In re Wight* this court approved an order of the Circuit Court of the United States putting in the record at a subsequent term an order which was made at a previous term of the court, remanding the case to the District Court. "A clerical error, as its designation imports, is an error of a clerk or subordinate officer in transcribing or entering an official proceeding ordered by another." *Marsh* v. *Nichols, Shepard & Co.,* 128 U. S. 605, 615.

Of another alleged exception to the general rule of finality of judgments, counsel for plaintiff in error says, after conceding the general rule that jurisdiction is lost after the lapse of the term at which judgment is rendered:

"But a well known exception to this general rule is that a judgment of dismissal based upon a mistake or inadvertence, such as appears in this record, can be set aside after the term, and that is the proposition with which this court is concerned in this case. The reason is that jurisdiction is not lost by a

dismissal by a mistake. This is one of the exceptions to the general rule that has been recognized in the decisions of this court for nearly a century."

To support this contention the case of *The Palmyra*, 12 Wheat. 1, is relied upon. In that case, which was one in admiralty, the court found there was no final decree in the court below, and, therefore, it was not appealable. The next term of the court a corrected transcript was adduced, showing there had been a final decree which the clerk, through mistake, had failed to include in the record, and the court permitted the filing of a new transcript. Mr. Justice Story, delivering the opinion of the court, said:

"The difference between a new appeal and a reinstatement of the old appeal after a dismissal, from a misprision of the clerk, is not admitted by this court justly to involve any difference of right as to the stipulators. Every court must be presumed to exercise those powers belonging to it which are necessary for the promotion of public justice; and we do not doubt that this court possesses the power to reinstate any cause dismissed by mistake. The reinstatement of the cause was founded, in the opinion of this court, upon the plain principles of justice and is according to the known practice of other judicial tribunals in like cases."

It is to be observed, while the learned justice, speaking for the court in that case, affirmed the "power of this court to reinstate any cause dismissed by mistake," the case had been dismissed at the first hearing, as Mr. Justice Story distinctly says, from a "misprision of the clerk," a recognized exception to the general doctrine of conclusiveness of the judgment after the term, and there is no indication that the correction made in that case was made without notice to the party interested. The adverse party was present and resisted the order, so there was opportunity to be heard.

*The Palmyra case* has been cited a number of times since in the course of opinions not involving the precise proposition, to the effect that the court "may reinstate a cause at a sub-

sequent term, dismissed by mistake." *Ex parte Sibbald* v. *United States,* 12 Pet. 487.

It was cited to the proposition that a court might correct misprision of clerks. *Bank of the United States* v. *Moss,* 6 How. 30.

In *Rice* v. *Railroad Company,* 21 How. 82, an opinion delivered by Mr. Chief Justice Taney, it was held that at common law, where a case upon error proceedings had been dismissed for want of jurisdiction, it could not be reinstated at a subsequent term upon a showing that the final judgment below, for want of which the case was dismissed, had been accidentally omitted from the record, as a production of the correct record showed.

In that case *The Palmyra case* was relied upon in support of the motion, but the court declined to follow it in a common law case and limited its application to the jurisdiction of an appellate court in admiralty cases, which the Chief Justice said was much wider than in a case at common law.

In the case of *Alviso* v. *United States,* 6 Wall. 457, a case dismissed for want of citation at a former term, omitted to be returned from neglect of the clerk, was reinstated upon the authority of *The Palmyra;* but in that case Mr. Justice Nelson, speaking for the court, distinctly stated that the omission in *The Palmyra case* was the error of the clerk in making out the transcript, and there is no reference to the general authority of the court to reinstate a case dismissed by mistake, regardless of the character of the omission or error.

*The Palmyra,* like every other case, must be read in the light of the point decided in the case, and in considering the language of Mr. Justice Story, who spoke of the general power of the court to reinstate a case dismissed by mistake, it is evident that he had in mind, for he says so, that the first dismissal was for a clerical mistake, which is a well-recognized ground for correcting judgments at subsequent terms, upon notice and proper showing.

The plaintiff in error also cites *Phillips* v. *Negley,* 117 U. S.

665. That case contains an emphatic statement of the doctrine that a judgment at law cannot be reversed or annulled after the close of the term at which it was entered by the court rendering the judgment, for errors of fact or law, with the exceptions which we have heretofore' noted. In that case Negley had been sued in the Supreme Court of the District of Columbia upon a certain order. Negley answered, denying his liability, and asserting that he signed the order only as agent; denied also that plaintiff was the holder of the order, or notice of non-payment. After issue joined on the pleas, on April 3, 1879, Negley. not appearing, a jury was called, and verdict found for the plaintiff, upon which judgment was rendered.

On September 4, 1882, Negley filed his motion to vacate the judgment and set aside the verdict rendered against him *ex parte*, because of irregularity, fraud and deceit and the negligence of his attorney. Affidavits were filed in support of this motion, setting forth a denial of Negley's personal liability on the order; that he was served with process when temporarily in Washington, being then and since a resident of Pittsburg; that he employed counsel and filed his defense, but received no further notice from the fall of 1874 until July 26, 1882, when he was sued on the judgment in Allegheny County, Pennsylvania; that plaintiff took no notice of the plea filed in the original case until May 3, 1877; that in the meantime, without defendant's knowledge, his counsel had removed from Washington, leaving him without counsel, as plaintiff and his counsel well knew, and on April 3, 1879, without notice, and while Negley was ignorant of the proceeding, called for a jury and procured the verdict and judgment against him.

Other testimony was taken, and after hearing on December 2, 1882, the Supreme Court of the District set aside the verdict because of "irregularity, surprise, fraud and deceit," and granted a new trial. In this court the judgment of the Supreme Court was reversed for error in entertaining and grant-

ing the motion to set aside the judgment, and the cause was remanded, without prejudice to Negley's right to file a bill in equity.   After citing and quoting from the *Bronson case,* 104 U. S. *supra,* Mr. Justice Matthews, who delivered the opinion of the court, said:

"Although the opinion [*Bronson case*] also shows that upon the facts of that case the action of the Circuit Court in vacating its judgment after the term could not be justified upon any rule authorizing such relief, whether by motion or by bill in equity, nevertheless the decision rests upon the emphatic denial of the power of the court to set aside a judgment upon motion made after the term and grant a new trial, except in the limited class of cases enumerated as reached by the previous practice under writs of error *coram vobis,* or for the purpose of correcting the record according to the fact where mistakes have occurred from the misprision of the clerk.   We content ourselves with repeating the doctrine of this recent decision, without recapitulating previous decisions in this court, in the point which has been noticed, for the purpose of showing their harmony.   It has been the uniform doctrine of this court.   'No principle is better settled,' it was said in *Sibbald* v. *The United States,* 12 Pet. 487, 492, 'or of more universal application, than that no court can reverse its own final decrees or judgments for errors of fact or law, after the term in which they have been rendered, unless for clerical mistakes; *Cameron* v. *McRoberts,* 3 Wheat. 591; *Bank* v. *Wistar,* 3 Pet. 431; or to reinstate a cause dismissed by mistake, *The Palmyra,* 12 Wheat. 1; from which it follows that no change or modification can be made, which may substantially vary or affect it in any material thing.   Bills of review, cases in equity, and writs of error *coram vobis* at law, are exceptions which cannot affect the present motion.'"

The case just cited is relied upon because of its reference to *The Palmyra.*   But the point to which that case is cited was not involved.   As we have seen, it had already been limited in *Rice* v. *Railroad Company,* 21 How. 82, to appeals in ad-

miralty. Further, that case, as we have seen, was one of clerical mistake in making up the record.

We, therefore, find nothing in the previous decisions of this court justifying the contention of the plaintiff in error as to the right to correct the judgment of the previous term, in view of the character of the error sought to be corrected, and more especially in the attempt, under the circumstances shown in this record, to set aside a judgment of a former term and render a new and different judgment without notice to the party who had been dismissed by a former judgment.

As we have seen, the question here involved pertains to a case where no notice is given and a new and different judgment is entered at a subsequent term. It is urged when the necessary facts appear in the record such correction can be made without notice, because, it is said, there is nothing to litigate. But aside from the fact that this proposition ignores the rule that jurisdiction once lost can only be regained by some proper notice, the case at bar is an illustration that such action may impair the substantial right of a party to be heard against the rendition of a new judgment against him. Had notice been given the defendant could have availed himself of his right to plead his discharge in bankruptcy by proper proceedings for that purpose. Loveland, Bankruptcy, 783. It may be that he did not lose all right to avail himself of the discharge in some other manner, but he had the right to show that in view of his discharge the judgment in question ought not to be rendered against him.

In *Capen* v. *Stoughton*, 16 Gray, 364, cited by plaintiff in error, a sheriff's jury in condemnation proceedings by mistake signed a verdict in favor of the municipal corporation instead of the property owners. The court held this a mistake of a merely formal and clerical kind; and "when no action has been taken on an order or judgment, and the rights of parties to the proceeding or those of third persons cannot be affected unjustly by the correction of an error, the court has power to order an action to be brought forward and a judg-

ment to be vacated in order that an entry may be made in conformity to the truth."

There is no suggestion that such action can be "brought forward" without notice to the adverse party, or a correction made where, as in the present case, the party has lost a valuable right in reliance upon a judgment of dismissal.

And if it be held that the mistake in this case, though not of the clerk, was of a clerical character, and within the rule permitting the correction of such mistakes by the court, a point unnecessary to decide in this case, such correction cannot be made after term without notice, certainly where the changed condition of the parties in view of a new right acquired would render it prejudicial to render a new judgment.

The appellant also relies upon the proposition that the Massachusetts statute, Revised Laws of Massachusetts, chap. 193, sec. 22, provides that if a judgment is rendered in the absence of the petitioner and without his knowledge a writ of review may be granted upon petition filed within one year after the petitioner first had notice of the judgment; otherwise within one year after the judgment was rendered. But we cannot agree that this remedy supplies the want of jurisdiction in the Massachusetts court to render, after the term and without notice, a new and different judgment against the defendant in error. Whatever his remedy may be in the state courts, want of jurisdiction may be pleaded wherever the judgment is set up against him in another forum.

We find nothing in any decision of this court which sanctions any different procedure, and the cases in the state courts which hold that notice is necessary after the term before a judgment can be set aside are numerous. Some of them will be found in the note in the margin.[1]

---

[1] *Murphy* v. *Farr*, 6 Halstead (N. J.), 186; *Martin et al.* v. *Bank of State*, 20 Arkansas, 629; *De Witt et al.* v. *Monroe & Brother*, 20 Texas, 289; *Berthold* v. *Fox*, 21 Minnesota, 61; *Cobb* v. *Wood*, 1 Hawkes (N. Car.), 95; *Hill* v. *Hoover*, 5 Wisconsin, 386; *Perkins et al.* v. *Hayward*, 132 Indiana, 95, 100; *Bryant* v. *Vix*, 83 Illinois, 1 15; *Keeney* v. *Lyons*, 21 Iowa, 277; *Weed* v. *Weed*, 25 Connecticut, 337, *Fischchessar* v. *Thompson*, 45 Georgia, 459, 467.

To sanction a proceeding, rendering a new judgment without notice at a subsequent term, and hold that it is a judgment rendered with jurisdiction, and binding when set up elsewhere, would be to violate the fundamental principles of due process of law as we understand them, and do violence to that requirement of every system of enlightened jurisprudence which judges after it hears and condemns only after a party has had an opportunity to present his defense. By the amendment and new judgment the proceedings are given an effect against the defendant in error which they did not have when he was discharged from them by the judgment of dismissal. By the judgment of dismissal the court lost jurisdiction of the cause and of the person of the defendant. A new judgment *in personam* could not be rendered against the defendant until by voluntary appearance or due service of process the court had again acquired jurisdiction over him. As a matter of common right, before such action could be taken he should have an opportunity to be heard and present objections to the rendition of a new judgment, if such existed.

We find no error in the judgment of the Court of Appeals overruling the demurrer to the second plea, and the same is

*Affirmed.*

Mr. Justice Brewer took no part in this case.